IN THE DISTRICT COURT FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

| | |
|---|---|
| **EMANUELLA NKEM NNADOZIE**<br>P.O. Box 1085<br>Randallstown, Md. 21233<br><br>           Plaintiff,<br><br>      v.<br><br>**MANORCARE HEALTH SERVICES—WOODBRIDGE VALLEY**,<br>Woodbridge Valley Manor Care<br>1525 N, Rolling Road<br>Catonsville, Maryland 21228,<br><br>      &<br><br>**MANORCARE-WOODBRIDGE VALLEY MD, LLC**<br>333 North Summit St.<br>Toledo, OH 43604<br><br>      &<br><br>**HCR MANOR CARE SERVICES, INC.**<br>333 North Summit Street<br>Toledo, OH 43604<br><br>      &<br><br>**HEARTLAND EMPLOYMENT SERVICES**<br>333 N. Summit St.<br>Toledo, OH 43604-2617<br><br>      &<br><br>**MANORCARE HEATH SERVICES, LLC**<br>PO Box 10086<br>Toledo, OH 46399<br><br>           Defendants. | **JURY TRIAL DEMANDED** |

# COMPLAINT

## PARTIES

1. Plaintiff Emanuella Nkem Nnadozie ("Nnadozie"), a Black Nigerian resident of the State of Maryland, is a registered nurse and former employee of Defendants (collectively, "Manorcare" or "Defendants").  She brings this suit against them, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., the Family Medical Leave Act, 29 U.S.C. §§ 2601 – 2654, and the Civil Rights Act of 1866, 42 U.S.C. § 1981,  for national origin and race discrimination.

2. Defendant HCR Manor Care Services, Inc., owns and operates the facility in which Ms. Nnadozie was employed. It runs facilities owned by Manorcare, Inc.

3. Defendant Manorcare-Woodbridge Valley, LLC, owns and operates the facility in which Ms. Nnadozie was employed.

4. Defendant Heartland Employment Services owns and operates the facility in which Ms. Nnadozie was employed.

5. Defendant Manorcare Health Services, LLC, owns and operates the facility in which Ms. Nnadozie was employed.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Ms. Nnadozie filed a timely charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), on or about April 14, 2014.

7. The EEOC issued a right to sue letter November 12, 2014.  The letter was sent by first class mail and received by Ms. Nnadozie no sooner than November 13, 2014.

8.  Ms. Nnadozie bring her Title VII claims within 90 days of receipt of the notice of right to sue.

9. No specific exhaustion is required under either 42 U.S.C. § 1981.

## JURISDICTION & VENUE

10. Defendants carry on their business of providing post-hospital skilled nursing care in Catonsville, Maryland.

11. All or substantially all of the facts giving rise to this complaint arise from Defendants' Catonsville, Maryland location.

12. Catonsville, Maryland is in Baltimore County, Maryland.

13. This court accordingly has jurisdiction over the claims in this Complaint.

## FACTS

14. Manorcare provides individualized post-hospital skilled nursing care.

15. Nnadozie began working for Defendants at Catonsville, on May 16, 2013, as a Night Shift Supervisor.

16. As such, she reported to the Director of Nursing.

17. At the time of her employment, the Director of Nursing was a woman with the first name of Alicia.

18. Alicia gave Nnadozie very favorable feedback.

19. She credited Nnadozie with favorably impacting the reduction of patient complaints and injury incidents.

20. Alicia left and towards the end of September 2013, at which time her duties were assumed by Michelle Jambora.

21. Jambora has been employed by Defendants since 2010.

22. Prior to October 1, 2013, Jambora worked at other Manor Care facilities, not Catonsville.

23. Prior to her employment with Defendants, Jambora worked for Genesis Healthcare between 2009 and 2010.

24. Subsequent to her employment at Genesis Healthcare, Jambora remained in contact with some of her colleagues there.

25. Genesis Healthcare hired Nnadozie in 2002 as a Registered Nurse.

26. On April 5, 2012, Ms. Nnadozie filed a discrimination charge at the Equal Employment Opportunity Commission against Genesis Healthcare.

27. The charge alleged race and national origin discrimination and retaliation, made unlawful by Title VII of the 1964 Civil Rights Act and 42 U.S.C. § 1981.

28. On July 30, 2013, EEOC issued a determination in Nnadozie's favor against Genesis.

29. On August 16, 2013, EEOC instituted a conciliation process between Genesis and Nnadozie.

30. After conciliation was ultimately unsuccessful, the case was ultimately brought to the Court at the United States District Court for the District of Maryland, case No. 14 cv-01991.

31. Upon information and belief, by October 2013, when she assumed responsibility for supervising Nnadozie, Jambora was aware of some or all of the legal developments between Genesis and Nnadozie.

32. Count IV of Nnadozie's lawsuit complaint against Genesis alleges that in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 2000e et. seq., Genesis retaliatorily interfered with the formation of a contract by providing false and misleading information to a potential employer because of her prior opposition to conduct in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 2000e et. seq.

33. It further specifies that Nnadozie's supervisors threatened to interfere with Ms. Nnadozie's attempt to obtain future employment, and made good on that threat.

34. Prior to October 1, 2013, Nnadozie had not had any interaction with her new supervisor, Jambora.

35. On October 1, 2013, before even introducing herself, Jambora called Nnadozie four times. On the first three occasions, Nnadozie picked up the phone but Jambora said nothing, and instead hung up moments after Nnadozie answered. On the fourth occasion, upon Ms. Nnadozie's picking up the phone, Jambora began screaming at Nnadozie: "Why didn't you pick up the phone on time, why did it take 5 minutes for the phone to be picked up? Its 3.40 in the morning, no one answers the phone. . . I can't take this, this is not allowed; make sure it does not happen again; patients complain that calls are not being answered, I don't want this to repeat itself."

36. Within a day, Nnadozie complained to Human Resources Vice President Elizabeth Kaczor.

37. Additionally, on October 23, 2013, Nnadozie also protested Jambora's treatment to Administrator Stacey Foelich, telling the Administrator that Jambora would treat her more favorably if she were not black.

38. Over the course of the next couple of weeks, Jambora continued looking for reasons to find fault with Nnadozie.

39. For instance, Jambora continually called Nnadozie to ask her if she had taken a break during her shift.

40. Jambora would also routinely ask invasive questions about what Nnadozie was doing during her breaks.

41. During this same time, Jambora forbade Nnadozie from entering the office regularly used by managers.

-6-

42. Other managers holding the same position held by Nnadozie are routinely permitted to use the office.

43. As a Night Shift Supervisor, Nnadozie's primary duties involved supervising and overseeing staff and advising them.

44. To facilitate this supervisory role, Night Shift Supervisors are not routinely assigned an independent case load.

45. However, Jambora assigned Nnadozie to update pain medication and handle other routine nursing functions for approximately 32 patients nightly.

46. Other supervisors were not given these tasks.

47. Having Nnadozie handle assignments normally assumed by charge nurses was likely to give fellow employees the impression that Nnadozie was demoted from her Shift Supervisor role.

48. In October, Jambora revealed in a manager's meeting that she knew Nnadozie had a "history of filing lawsuits against employers."

49. In fact, at the time of the comment, her only experience filing claims against employers was her EEOC charge against Genesis, Nnadozie's and Jambora's former employer.

50. Foelich had been hired in late September 2013.

51. Foelich is more friendly with her white subordinates than those who are black.

52. Foelich responded to Jambora's assertion at the meeting about Nnadozie's "history of filing lawsuits," by stating that "[Nnadozie] has to go."

53. On October 30, 2013, Nnadozie suffered an on-the-job physical injury and went on approved FMLA leave.

54. December 30, 2013 was Nnadozie's first day back to work. Based on her doctor's instructions she was placed on light duty. Additionally, to accommodate her physical therapy, she continued to take intermittent FMLA leave.

55. On December 30, 2013, Nnadozie repeated her contention that Jambora was discriminating against her, to Foelich.

56. On January 15, Nnadozie was suspended without further pay.

57. On February 6, 2014, Nnadozie again informed Human Resources Manager Elizabeth Kaczor of her contention that Defendants were discriminating against her.

58. On February 19, 2014, Defendants wrote a letter to Nnadozie, informing her that she was being terminated.

59. The letter was postmarked February 21, 2014.

60. Defendants maintain that the February termination was for the same reason as the January suspension.

61. At an Unemployment Insurance Appeal hearing before the Maryland Department of Labor, Licensing and Regulation, Defendants' witness stated that Nnadozie was suspended because she falsely documented that she contacted a patient with lab results.

62. The employer claims that the evidence that the documentation is false, in that the patient had died prior to when Nnadozie allegedly documented having contacted her— on or about January 11, 2014.

63. However, it is also undisputed that Nnadozie called the cell phone number registered to the patient, sought, and received confirmation that she was speaking with the patient.

64. It is undisputed that Nnadozie would have had no reason to know that the patient was deceased or that someone other than the patient would have answered the patient's cell phone and identified herself as the patient.

65. It is undisputed that when calling patients, employees, such as Ms. Nnadozie, are required to only ask for the patient.

66. The hospital does not have a routine practice of firing nurses if it turns out that the individual on the other end of the call has falsely identified herself as the patient.

67. Defendants' firing of Nnadozie was clearly the result of its race discriminatory animus, her discrimination case against Genesis, which inflamed Defendants against her, and her later protests against Defendants for their treatment of her.

## V.  STATEMENT OF CLAIMS

### COUNT I:  UNLAWFUL SUSPENSION AND TERMINATION OF PLAINTIFF NNADOZIE, ON ACCOUNT OF RACE AND NATIONAL ORIGIN DISCRIMINATION AND RETALIATION, IN VIOLATION OF TITLE VII, 42 U.S.C. § 2000e et. seq., AND 42 U.S.C. § 1981

68. Plaintiff herein incorporates all above-mentioned paragraphs by reference.

69. It is unlawful under Title VII for an employer to suspend and/or terminate an employee's employment because of her race national origin or because she has opposed conduct in violation of said laws.  Such retaliation also violates 42 U.S.C. § 1981 when motivated by race.

70. Plaintiff Nnadozie is a Nigerian Black African and as such is a member of a protected class under § 1981 and Title VII.

71. When working for her prior employer, Genesis, Plaintiff Nnadozie opposed discrimination based on race and national origin.  She additionally opposed Defendants' own discrimination inflicted upon her while she was working at Manorcare.

-8-

72. Defendant's January 15, 2014 suspension— whose rationale later became its alleged reason for firing Nnadozie in February— was effected soon after the retaliatory discussion of Nnadozie's case against Genesis in the management meeting, and just two weeks after Nnadozie's protected discrimination complaint to Administrator Foelich. As the protests occasioned the suspension and firing, Defendants acted retaliatorily, in violation of Title VII and 42 U.S.C. § 1981.

73. Nnadozie has suffered lost income and consequential damage, depression, anxiety, fear, embarrassment, humiliation, mental anguish, emotional distress and other emotional damage as the result of Manorcare's unlawful conduct.

### COUNT II: RETALIATORY ALTERATION OF NNADOZIE'S WORKING CONDITIONS, IN VIOLATION OF 42 U.S.C. § 2000e AND 42 U.S.C. § 1981

74. Plaintiff hereby incorporates by reference all the above paragraphs.

75. Defendants imposed radically changed and more onerous working conditions on Nnadozie, when they assigned her substantial additional duties, including those normally assigned to charge nurses, in addition to her regular supervisory duties associated with her position as a shift supervisor.

76. Defendants did this on account of Nnadozie's case against Genesis, and later to avenge her internal protests against Defendants.

77. In so doing, under *Burlington Northern*, those Defendants clearly violated 42 U.S.C. § 2000e and 42 U.S.C. § 1981.

78. Because of Defendants' unlawful conduct, Plaintiff Nnadozie has suffered depression, anxiety, fear, embarrassment, humiliation, mental anguish, emotional distress and other emotional damage.

### COUNT III: HOSTILE WORK ENVIRONMENT, INFLICTED UPON PLAINTIFF NNADOZIE, ON ACCOUNT OF

**HER RACE AND NATIONAL ORIGIN,
AND IN RETALIATION FOR PROTECTED ACTIVITY,
IN VIOLATION OF 42 U.S.C. § 2000e et. seq. AND 42 U.S.C. § 1981**

79.     Plaintiff herein incorporates by reference all above-mentioned paragraphs.

80.     It is unlawful under Title VII for an employer to permit the creation of and to subject an employee to a hostile working environment based on race, national origin or in retaliation for protected activity under 42 U.S.C. § 1981 and Title VII.  When occasioned by racial or retaliatory animus, such an environment also violates 42 U.S.C. § 1981.

81.     Defendants created and subjected Plaintiff Nnadozie to a hostile working environment by permitting the hostile conduct described above, which included altering her job duties, shouting at her, badgering her about her breaks, etc.

82.     Defendants created and subjected Nnadozie to this hostile working environment because of Nnadozie's race, because she has opposed discrimination based on race and national origin at Genesis, and later because of her internal protests against discrimination.

83.     Defendants' conduct constitutes violations of 42 U.S.C. § 1981 and Title VII.

84.     Plaintiff Nnadozie has suffered lost income and consequential damage, depression, anxiety, fear, embarrassment, humiliation, mental anguish, emotional distress and other emotional damage as the result of Manorcare's unlawful conduct.

### COUNT IV: RETALIATORY TERMINATION IN VIOLATION OF THE FAMILY & MEDICAL LEAVE ACT OF 1993

85. Plaintiff repeats and re-alleges the allegations in the paragraphs of this complaint with the same force and effect as is set forth herein.

86. The Family and Medical Leave Act of 1993 provides up to twelve weeks of unpaid leave for a serious health condition of a covered employee. 29 U.S.C. §§ 2601 – 2654.

87. 29 C.F.R. § 825.220(c) provides that: "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under 'no fault' attendance policies."

88. Defendants' alleged reason for firing Nnadozie stems from an alleged incident that is said to have occurred just after Nnadozie's return from FMLA leave.

89. A reasonable jury could easily infer from this timing and other facts, that Defendants suspended and fired Nnadozie because of her use of FMLA.

90. By terminating Nnadozie's employment because of her immediately past legitimate use of FMLA leave, Defendants violated the statutes and caused Griffith financial damage.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that the Court grant the following relief:

(a) A declaratory judgment that Defendants' conduct violated Nnadozie's rights;

(b) Reinstatement of the plaintiff to the position she would have held absent the discrimination and retaliation from which they suffered, with full back pay and benefits;

(c) Compensatory damages, in amounts to be determined by the jury in accordance with the proof at trial, for both the pecuniary and emotional harms caused by Defendants;

(d) Punitive damages, since Defendants' actions were wanton, evil actions undertaken with abiding malice;

(e) Prejudgment and post-judgment interest;

(f) Reasonable attorneys' fees, expenses and costs;

(g) Posting of notices on Defendants' premises notifying employees that Defendant has violated the anti-discrimination laws, and that employees who report future violations may not be subject to retaliation; and

(h) Such other relief as the Court shall deem just and proper.

## VII.   JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

>Respectfully submitted,
>
>THE GOLDSMITH LAW FIRM, LLC
>
>/s/ Leizer Z. Goldsmith
>_____
>Leizer Z. Goldsmith (D.C. Bar No. 419544)
>Kyle G. Ingram
>5335 Wisconsin Avenue, NW, Suite 440
>Washington, DC 20015
>Tel: (202) 895-1506
>Fax: (202) 318-0798
>Attorneys for Plaintiff